In the Matter of JOHN E. MARTIN, JR., Individually and as Guardian ad Litem of JOAN E. MARTIN, an Infant, Appellant, against SCHOOL BOARD OF UNION FREE DISTRICT No. 28, LONG BEACH, Respondent.

Submitted April 4, 1950; decided July 11, 1950.

*Bernard Meyerson, Morris J. Stein* and *Samuel Spevack* for appellant. Special Term erred when it stated that section 50-e of the General Municipal Law barred it from exercising its discretion in favor of infant plaintiff. (*Tilinsky* v. *City of New York,* 255 App. Div. 815; *Matter of Nori* v. *City of Yonkers,* 274 App. Div. 545, 300 N. Y. 632; *McVeety* v. *City of New York,* 87 N. Y. S. 2d 631; *Matter of Hector* v. *City of New York,* 193 Misc. 727; *Matter of Young* v. *Board of Educ., Vil. of Lancaster,* 193 Misc. 216; *Matter of Curtin* v. *City of New York,* 196 Misc. 587.)

*Edward A. Harmon* for respondent. The application was properly denied. (*Matter of Young* v. *Board of Educ., Vil. of Lancaster,* 193 Misc. 216; *Matter of Hector* v. *City of New York,* 193 Misc. 727; *Matter of Nori* v. *City of Yonkers,* 274 App. Div. 545; *Staszewski* v. *City of Rochester,* 271 App. Div. 19; *Matter of Ferris* v. *Board of Educ., Towns of Roxbury & Gilboa,* 195 Misc. 871.)

DESMOND, J. In 1945 (L. 1945, ch. 694) to put an end to much conflict and confusion in the statutory and decisional law applicable to notices of claim against public corporations, the Legislature enacted section 50-e of the General Municipal Law. That statute was intended to revise completely, and to set up in one section, the whole of the law on the subject. In its first three subdivisions, it enacts that, whenever, in a tort case, a notice of claim is required by law as a condition precedent to the commencement of a suit or proceeding against a public corporation, or officer or employee thereof, the notice shall comply with the new section, shall be given within sixty days after the claim arises, shall set forth certain detailed information, and must be served on a person to whom a summons may be delivered. Subdivisions 4, 6 and 7 need not be discussed herein.

Subdivision 5, with which we are concerned on this appeal, confers on the court a limited, and discretionary power, to relieve against failure, under certain circumstances, to file a notice of claim in time. That subdivision, complete in itself, is in full as follows:

" 5. Where the claimant is an infant, or is mentally or physically incapacitated, and by reason of such disability fails to serve a notice of claim as provided in the foregoing subdivisions of this section within the time limited therefor, or where a person entitled to make a claim dies before the expiration of the time limited for service of the notice, the court, in its discretion, may grant leave to serve the notice of claim within a reasonable time after the expiration of the time specified in subdivision one.

" Application for such leave must be made within the period of one year after the happening of the event upon which the claim is based, and shall be made prior to the commencement of an action to enforce the claim, upon affidavit showing the particular facts which caused the delay, accompanied by a copy of the proposed notice of claim. The application shall be made re-

turnable at a trial or special term of the supreme court, or of the county court, in the county where an action on the claim could properly be brought for trial, and due notice thereof shall be served upon the person or party against whom the claim is made, in the manner specified in subdivision three."

Nineteen months after an alleged tortious injury to his daughter, who was twelve years old at the time of the accident, this proceeding was brought by the father to obtain an order permitting the service of a claim on respondent school board, *nunc pro tunc*. The petition, to explain the delay, says that the school board's insurance carrier investigated the matter and promised to adjust the claim but delayed and misled petitioner until the statutory period of a year had elapsed, then refused to pay. Special Term denied the application on the ground that the court was totally without discretion, under subdivision 5 of section 50-e, above quoted, to grant any such relief, since proceedings therefor had not been begun within a year after the event on which the claim is based. The Appellate Division affirmed but granted leave to petitioner to appeal to this court. We think there is no escape from the conclusion reached by the courts below.

Until the passage of section 50-e there were two well-known defects, or kinds of defects, in the law of New York as to filing notices of claims against municipal and other public corporations. First, there was no uniformity in the numerous special statutes applicable to various municipalities. Second, there was confusion and technicality galore in the court decisions. The Judicial Council, therefore, proceeded to deal with the subject, by way of study, report and recommendations to the Legislature. Its proposal, made in 1943, and later partly adopted and partly rejected by the Legislature as we shall see, was prefaced by this introductory statement: "The requirement of notice is one of the safeguards devised by the law to protect municipalities against fraudulent and stale claims for injuries to person and property. It is designed to afford the municipality opportunity to make an early investigation of the claim while the facts surrounding the alleged claim are still ' fresh '. On the other hand, ' these provisions (notice statutes) were not intended as a trap for the unwary and the ignorant.' An examination of the decisional law, however, indicates that far too often technicalities

in this field have prevented the disposition of honest claims on their merits.'' (Tenth Annual Report of N. Y. Judicial Council, 1944, p. 265, inner quotations from 17 Corn. L. Q. 687, 689 [1932].)

To remedy those defects, the Judicial Council sent to the Legislature a proposed new section 50-e, which, however, differed in many ways from the statute actually passed, two years later. The 1943 Council proposal (Tenth Annual Report, pp. 265–267) required filing within ninety days, but, as to claims not filed on time, it made a suggestion which the Legislature completely rejected. That recommendation (found in subdivisions 1 and 4 of the Judicial Council's proposed section 50-e) would have extended the time for filing, in the case of a claimant who was an immature infant, or mentally or physically incapacitated, *until a reasonable time after the cessation of the disability,* even though more than ninety days after the tort, and would have provided further amelioration for any tardy claimant by authorizing the court in its discretion, and under certain circumstances, to grant leave, on application by motion made at any time before trial, for service of the notice of claim within a reasonable time after the end of the prescribed ninety days. Significant is the Judicial Council's discussion (Tenth Annual Report, p. 269) of its recommendation that immature infants, and persons mentally or physically incapacitated, be allowed a reasonable time, after disability's end for filing. The council. pointed out that '' existing notice provisions in New York do not include an exception in favor of a claimant who is under a legal disability '', but, citing *Murphy* v. *Village of Fort Edward* (213 N. Y. 397 [1915]) and *Russo* v. *City of New York* (258 N. Y. 344 [1932]) pointed out, also, that the New York courts had been '' liberal in the construction of these provisions '' and had '' sustained a notice given within a reasonable time after the disability ceases, although the prescribed period for notice has expired.'' The Legislature was thus reminded: first, that none of the existing statutes made specific exceptions because of disability; and, second, that the courts, finding in those statutes neither authorization for, or prohibition against, such favors, had granted to disabled persons extensions of time for filing.

If the Legislature had seen fit to pass the Council's bill as originally proposed, the present claimant would be in a position to ask for relief. But the Legislature did something quite different, as present section 50-e shows on its face, and as the Judicial Council explained in its Eleventh and Twelfth Annual Reports. The Eleventh Report (pp. 51-52), submitted early in 1945, recounts that the Council's proposed bill had been introduced in 1943 and 1944, but not passed, and that a " compromise bill" had been prepared, introduced and reported out by the Assembly Judiciary Committee in 1944, but had been recommitted because of errors of form and because certain municipalities asked for opportunity to study the matter further. That " compromise bill ", with some changes as to the number of days allowed for certain procedures, was enacted in 1945 and is the present section 50-e. The Judicial Council's Eleventh Annual Report (p. 52) clearly states — as is indeed apparent from the most cursory comparison — that the Council's proposal that immature infants and others disabled be permitted to file after the end of disability, had been dropped from the compromise bill. Instead, as the Council reported, the compromise bill " provided that the court may use its discretion to extend the time for filing when an infant or person mentally or physically incapacitated is concerned, on condition that application for such leave is made within six months [one year as actually later enacted] from the date of the accrual of the claim." The Council's Twelfth, or 1946, Report (pp. 21-23) setting out in full, and commenting on, section 50-e as finally enacted in 1945, again makes it clear that the new law was " the result of a compromise ", and points out that the new law demands filing within sixty days " with certain exceptions that may, under some circumstances, extend the period up to one year (subd. 5)."

This history of the gestation and birth of this statute, seems necessary by reason of contentions now made that, despite the statute's plain language, and despite its specific provisions as to infants and others under disability, nevertheless, so we are told, it is still the law that, long after the end of the one-year period limited by subdivision 5 of section 50-e, a court may still permit late filing, by an infant. The short answer is that the Legislature has seen fit to deny such a power to the court, and that the Legislature had the undoubted right so to do (*Winter* v. *City of Niagara Falls,* 190 N. Y. 198, 203).

References to the cases, such as *Murphy* v. *Village of Fort Edward* (213 N. Y. 397) and *Russo* v. *City of New York* (258 N. Y. 344, *supra*) decided before section 50-e became the law, are helpful only to show what the law was before September 1, 1945. The Legislature, which was, actually as well as theoretically, familiar with those decisions, and which had before it the Judicial Council's recommendation that those decisional rules be made statutory, nevertheless, deliberately, and after delay, consideration and compromise, made new and entirely different law on the subject. Wise or unwise, fair or harsh, that law is as binding on the courts as it is on this petitioner and on everyone else.

The maxim or rule of construction '' that the law does not seek to compel a man to do that which he cannot possibly perform '' (Broom's Legal Maxims [4th ed.], cited in *Walden* v. *City of Jamestown,* 178 N. Y. 213, 217) is sometimes helpful in determining legislative intent, when that intent is in doubt. There is no such doubt here. Furthermore, as to what is or is not possible, it is to be presumed that the Legislature knew, as we all know, that it is not ordinarily impossible for an immature infant, or other disabled person, to have claims filed and suits brought in his behalf. Out of that general knowledge the Legislature fashioned a general law, and we cannot write into it exceptions which the Legislature designedly omitted.

The order should be affirmed, with costs.

FROESSEL, J. (dissenting). The question before us is whether section 50-e of the General Municipal Law (L. 1945, ch. 694) is so absolute, unyielding and rigid as to be beyond a construction which admits of an excuse for delay in performance, when caused by the infancy of the injured person, in this case twelve years of age. A majority of the court take the view that it is, and, though the infant be of tender years, much too young to do anything for itself, it will lose its right of action if notice of claim is not filed in any event within a year after the happening of the accident. Of what moment is a year to a young child of three or six, or nine or even twelve?

We have held that rights accorded by law to infants are not forfeited '' because a parent did not perform for an infant where performance was excused because of the infancy.'' (*Murphy* v. *Village of Fort Edward,* 213 N. Y. 397, 403; *Russo* v. *City of New York,* 258 N. Y. 344, 348.) Are we to assume, then,

that the Legislature intended that though a child of tender years is incapable of filing a notice of claim, and may not be charged with the parents' neglect to do so for him, he is in all events to be barred from a right of action that is otherwise saved for him during the entire period of his infancy (Civ. Prac. Act, § 60) despite such impossibility of performance? I cannot agree that such was the legislative intention, notwithstanding its failure to adopt a particular recommendation of the Judicial Council, to which I shall later refer.

Long before the enactment of section 50-e, this court had established the rule that claimants might be excused from compliance with the strict letter of similar statutes by reason either of physical or mental disability or of infancy.

In *Walden* v. *City of Jamestown* (178 N. Y. 213, 217), we said: '' It is an accepted maxim that the law does not seek to compel a man to do that which he cannot possibly perform.'' In *Winter* v. *City of Niagara Falls* (190 N. Y. 198), the statute provided that notices of claim shall be presented '' 'within thirty days after the occurrence causing such damages ' '', and that the omission to do so '' 'shall be a bar to an action against the city therefor ' '' (p. 202). Could the injunction of this statute be more definite? Yet we said (p. 203): '' To require the presentation of a claim within a specified time is quite a reasonable provision * * *. The provision is not so rigid as to be beyond a construction, which admits of a substantial compliance with its requirement, or of an excuse for delay in performance, when caused by the inability of the injured person to comply.''

In *Forsyth* v. *City of Oswego* (191 N. Y. 441), the statute required that notice of claim be presented within three months after the happening of the event, and that the omission to do so '' ' shall be a bar to any action or proceeding therefor against the city.' '' (P. 443.) Despite the same explicit injunction we again asserted the proposition that the law does not seek to compel that which is impossible.

In *Murphy* v. *Village of Fort Edward* (213 N. Y. 397, *supra*), a notice of claim was filed almost twenty-three months after the injury, despite the provision that *no action shall be maintained* unless the notice of claim shall have been filed within sixty days after the accrual of the cause of action. We there again recognized that municipal liability for injuries is a matter

within the control of the Legislature, and that the requirement that claims be presented within the specified time is a reasonable provision; that said requirement, however, is not absolute and unyielding, and continued (pp. 403, 404): "We are of the opinion that immature infancy, which includes the age of five years, is, as a matter of law, a condition of physical and mental inability excusing compliance with the requirement of section 341. It is reasonable to conclude that inability is attributable to a first period of infancy and ability is attributable to a final period, as a matter of law, and through a period lying between those two the question of ability is a question of fact to be submitted to and determined by the jury. * * * The conclusion here reached is, as appears from our prior decisions already cited, within the legislative intention and is just."

In *Staszewski* v. *City of Rochester* (271 App. Div. 19, affd. 296 N. Y. 705) a ten-year-old infant failed to file a claim within thirty days as required by the Charter of the City of Rochester. The charter provided that " no action may be maintained " unless this were done — another rather definite injunction. It further provided that the section " applies to claims of infants and all other persons." The city contended that because of that provision infants who had not filed a claim within thirty days were barred. The court pointed out that the New York rule enunciated in prior decisions, excusing an infant from strict compliance with such statutory requirements, was not based on the thought that the section did not apply to infants. On the contrary, our courts have always recognized that these requirements do so apply. But the infant is excused from such compliance only where his immaturity renders him physically or mentally unable to comply.

When the Legislature enacted section 50-e, it must have known that in the *Winter* and *Forsyth* cases (*supra*) the statutes under consideration contained the rather positive language that omission to file a claim in time " shall be a bar " to any action against the city, and that in the *Murphy* and *Staszewski* cases (*supra*) the statutes provided that in case of such omission " no action shall [*Murphy* case] [may, *Staszewski* case] be maintained ", and that we nevertheless held such statutes were not " absolute and unyielding ". It must also be deemed to have known what the Judicial Council specifically pointed out

immediately following its recommendation in its Tenth Annual Report and Studies, 1944 (p. 269): "Existing notice provisions in New York do not include an exception in favor of a claimant who is under a legal disability. However, the courts of New York have been liberal in the construction of these provisions, and have sustained a notice given within a reasonable time after the disability ceases, although the prescribed period for notice has expired. The inclusion of the proposed exception substantially codifies the decisional law of New York on this point. The proposal is in accord with analogous statutory provisions of this and other states, and liberal legal thought."

I do not think we must conclude that, because the Legislature did not adopt the particular recommendation of the Judicial Council, which embraced not only infants but physically incapacitated adults as well, that it meant to overrule the decisional law with regard to immature infants. If it had adopted the exact language of the Council's recommendation, the Legislature would have extended, as to adults, the short period of limitation — usually one year (see Appendix, Tenth Annual Report of N. Y. Judicial Council, 1944, pp. 284–296) — found in most municipal charters within which the action itself must be begun, and we can readily understand why this was not desired. It is more reasonable to assume, it seems to me, that the Legislature, recognizing the decisional law upon the subject with regard to immature infants, intended to leave untouched the principle laid down by our decisions before the enactment of section 50-e, which liberally interpreted statutes much stricter than the one here under review. I think it is also clear that the purpose of the statute, which followed conferences with representatives of municipal corporations, was, as the Judicial Council pointed out, " to rectify the frequent and often gross injustices by which defects in form have prevented consideration on their merits of claims against municipal corporations ", as well as the " unification of the many diverse provisions found in various municipal charters and statutes " (Eleventh Annual Report of N. Y. Judicial Council, 1945, p. 51).

Despite the limitation of a year found in section 50-e, I am of the opinion that the Legislature did not intend to include within its provisions a class of persons which the law has universally recognized to be utterly devoid of responsibility and

for whom it has provided many safeguards, and that it did not intend to require them to do that which is impossible of performance.

It is a general rule of law that no unjust or unreasonable result was intended by the Legislature, and a statute must be interpreted, if possible, so as to avoid such results (*Matter of Breen* v. *New York Fire Dept. Pension Fund,* 299 N. Y. 8, 19; *Saltser & Weinsier, Inc.,* v. *McGoldrick,* 295 N. Y. 499, 509); in avoiding an unjust result, it is permissible to disregard the literal language of a statute and give it a rational interpretation, consistent with justice and common sense (*Kauffman & Sons Saddlery Co.* v. *Miller,* 298 N. Y. 38, 44; *People ex rel. Twenty-third St. R. R. Co.* v. *Commissioners of Taxes of City of N. Y.,* 95 N. Y. 554, 558–559; *People ex rel. Westchester Fire Ins. Co.,* v. *Davenport,* 91 N. Y. 574, 584–585; *Surace* v. *Danna,* 248 N. Y. 18, 21), even extending to " exceptions through implication " (*Matter of Meyer,* 209 N. Y. 386, 390).

In accordance with the well-established rule as followed by this court in these situations over a long period of years, and in the light of the above rules of construction, the statute under review should be interpreted so as to allow the present application to be made, and the court's discretion to be exercised, beyond the period specified in section 50-e in the case of this twelve-year-old infant; to hold otherwise would be tantamount to depriving young and immature infants of their right of action. It is no answer to say that it is not ordinarily impossible for an immature infant to have claims filed and suits brought in its behalf. Such an infant's rights may not be made dependent upon the fidelity of others.

The order appealed from should be reversed, with costs to abide the event, and the matter remitted to Special Term for further proceedings.

Loughran, Ch. J., Lewis, Dye and Fuld, JJ., concur with Desmond, J.; Froessel, J., dissents in opinion in which Conway, J., concurs.*

Order affirmed.

---

* See, also, *Chavers* v. *City of Mount Vernon,* 301 N. Y. 634. —[Rep.